# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| KENNETH WARE, JR | ) |
| Petitioner, | ) |
| vs. | ) Case No. 13-3180-CV-S-BP-P |
| JEFF NORMAN, | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his 2009 convictions and sentence for robbery in the first degree and armed criminal action, which were entered in the Circuit Court of Christian County, Missouri. See State v. Ware, Case No. 04N8-CR01857-01 (Cir. Ct. of Christian County, Mo.) (jury verdict entered Jan. 12, 2009); Respondent's Exhibit A. Petitioner's conviction was affirmed on direct appeal by the Missouri Court of Appeals, Southern District. State v. Ware, Case No. SD29794, 326 S.W.3d 512 (Mo. Ct. App. 2010) (mandate issued Dec. 2, 2010); Respondent's Exhibit F. Petitioner's motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 29.15 was denied by the Circuit Court of Christian County, Missouri, with an evidentiary hearing held February 17, 2012, see Ware v. State, Case No. 11CT-CC00063 (Cir. Ct. of Christian County, Mo.) (filed Jan. 26, 2011), and that judgment was affirmed by the Missouri Court of Appeals, Southern District. Ware v. State, SD32079 (Mo. Ct. App. Mar. 22, 2013) (unpublished opinion); Respondent's Exhibit L.

Petitioner states the following as grounds for relief: (1) the trial court erred in allowing the prosecution to exercise a peremptory strike against venireperson Miguel Montiel; (2) the trial court erred in denying petitioner's motion for judgment of acquittal filed at the close of the state's

evidence; (3) the trial court erred in denying petitioner's motion for judgment of acquittal filed at the close of all evidence; (4) the trial court erred in denying petitioner's motion to exclude the testimony of Lunda Croney; (5) the trial court erred in allowing the verdict-directing instructions; (6) the trial court erred in excluding the testimony of John Gambon about the possibility of inaccuracy of eye witness testimony; (8)[1] the trial court erred in denying petitioner's motion to quash the venire panel; (9) petitioner's trial counsel was ineffective for failing to file a motion in limine to exclude any testimony as to how police obtained his photograph for use in the photographic line-up.

Respondent has consolidated Grounds 2, 3, and 5 because they all challenge sufficiency of the evidence. Doc. No. 23, pp. 3. Respondent argues that petitioner's grounds for relief are without merit.

## **Ground 1**

In his first ground for relief, petitioner asserts that the trial court erred in denying his objection to the peremptory strike of the only minority venireperson, Miguel Montiel, from the jury panel, thereby violating the Equal Protection Clause as explained in <u>Batson v. Kentucky</u>, 476 U.S. 79, 96 (1986). Petitioner further maintains that the trial court erred in overruling petitioner's objection to the prosecution's strike because the state failed to offer a legitimate and race-neutral explanation for peremptorily striking Mr. Montiel.

At the conclusion of voir dire, the state used a peremptory strike to remove venireperson Montiel from the jury, and petitioner's defense counsel challenged the strike under <u>Batson</u> because Mr. Montiel was Hispanic and was the only minority venireperson on the panel.

---

[1]The petition does not contain a Ground 7.

2

Respondent's Exhibit A, pp. 135-36. In response, the state maintained that it struck Mr. Montiel from the jury because Mr. Montiel did not respond to any questions, because Mr. Montiel's appearance was "unkempt," and because Mr. Montiel marked his questionnaire showing that he had been convicted of a crime other than a traffic ticket. Respondent's Exhibit A, p. 136.

The United States Supreme Court held in <u>Batson</u> that a defendant may establish a prima facie case of purposeful discrimination in jury selection by demonstrating (1) that "he is a member of a cognizable racial group" and that "the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race;" and (2) that the facts and circumstances raise an inference that the prosecution employed peremptory strikes to exclude certain persons from the jury on the basis of race. <u>Batson</u>, 476 U.S. at 96.

If the defendant makes a prima facie case, the state bears the burden of providing a neutral reason for challenging jurors that are racial minorities. <u>Id</u>. at 97-98. The state's explanation, however, "need not justify a challenge for cause, <u>Batson</u>, 476 U.S. at 97, . . . or be 'persuasive, or even plausible.'" <u>Hall v. Luebbers</u>, 341 F.3d 706, 713 (8th Cir. 2003) (citations omitted). "Each step of the <u>Batson</u> inquiry involves a factual determination entitled to a presumption of correctness unless overcome by clear and convincing evidence." <u>Hall v. Luebbers</u>, 341 F.3d at 713.

Assuming that petitioner did present a prima facie case, the trial court found that the state proffered legitimate, race-neutral reasons for exercising a peremptory strike against venireperson Montiel. See <u>Purkett v. Elem</u>, 514 U.S. 765, 769 (1995) (the reasons the prosecutor asserted for striking the venireperson at issue were not characteristic of any particular race; therefore, they were "legitimate" in that they did not deny equal protection). Because the trial court is in the best position to observe the juror in question and to assess the prosecutor's demeanor and reasons for

3

striking the juror, Weaver v. Bowersox, 241 F.3d 1024, 1027 (8th Cir. 2001), this Court may set aside the state court's findings regarding pretext, which involve questions of fact, only if they are clearly erroneous. Devoil-El v. Groose, 160 F.3d 1184, 1186 (8th Cir. 1998) (listing cases in which the prosecutor's reasons were sufficiently race-neutral to withstand a Batson challenge and finding that combination of characteristics was different in the non-stricken venirepersons than in the stricken venireperson), cert. denied, 525 U.S. 1163 (1999).

Petitioner asserts that the prosecution's reasons for striking venireperson Montiel were pretextual because there were three other venirepersons who did not respond to any questions that were not struck from the jury; because there were other unkempt venirepersons that were not struck; and because the state did not ask Mr. Montiel any questions about his convictions. Respondent's Exhibit A, pp. 136-37. The record, however, supports the Missouri Court of Appeals determination that "the trial court did not err in overruling [petitioner's] Batson objection," Respondents' Exhibit F, p. 13, and that there is no "clear and convincing evidence" that the prosecutor's reasons for striking Mr. Montiel were pretextual.

Where, as here, the state courts made findings of fact that the prosecutors were not racially motivated in making their strikes, those factual findings "shall be presumed to be correct"and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). See also Purkett v. Elem, 514 U.S. at 769 (1995) (quoting Marshall v. Lonberger, 459 U.S. 422, 432 (1983)). This is because "evaluation of the prosecutor's state of mind based on demeanor and credibility lies particularly within a trial judge's province." Hernandez v. New York, 500 U.S. 352, 365 (1991) (plurality opinion).

Petitioner has failed to present "clear and convincing evidence" demonstrating that the

4

Missouri Court of Appeals' denial of petitioner's Batson claim was based on an unreasonable determination of the facts or on a misapplication of federal constitutional law. See 28 U.S.C. 2254(d)(1) and (2); Batson v. Kentucky, 476 U.S. at 98 (credibility determinations regarding race-neutral reasons for strikes are left for the state courts to decide). Thus, Ground 1 will be denied.

### Grounds 2, 3, & 5

Petitioner contends that there was insufficient evidence to support the charges of robbery and armed criminal action at the close of the state's evidence (Ground 2) and at the close of all of the evidence (Ground 3). Doc. 1, pp. 18-24. Petitioner also contends that, as the evidence was allegedly insufficient, the trial court should have sustained the objection to the verdict directors (Ground 5). Doc. 1, pp. 30-32. Specifically, petitioner contends that the state's evidence against petitioner was insufficient because all evidence was circumstantial; because there was no physical evidence that linked petitioner to the crime; because the victim's description of the perpetrator was vague; because the victim only saw the suspect for a short time and focused only on his eyes; and because the testimony of Lunda Croney at trial was contradictory to former statements she had given as to petitioner's involvement in the crime and should have been excluded for prosecution's failure to produce Ms. Croney's proffer statement (Ground 4). Doc. 1, pp. 24-29.

The Missouri Court of Appeals, in affirming the trial court's ruling as to petitioner's sufficiency of the evidence claims, stated:

> [Petitioner]'s complaint that the evidence against him was "circumstantial" is unpersuasive. Victim's eyewitness testimony constituted direct evidence of [Petitioner]'s participation in these crimes. State v. Watkins, 804 S.W.2d 859, 860 (Mo. App. 1991). This evidence alone was sufficient for the jury to find [petitioner] guilty. State v. Williams, 277 S.W.3d 848, 853 (Mo. App. 2009). Moreover, a jury is entitled to give circumstantial evidence the same weight as direct evidence when drawing reasonable inferences from the evidence presented.

5

>State v. Miner, 311 S.W.3d 313, 324 (Mo. App. 2010); State v. Hagensieker, 299 S.W.3d 302, 305 (Mo. App. 2009). The circumstantial evidence connecting [petitioner] to these crimes was strong, and the jury was entitled to rely upon such evidence, as well as Victim's testimony, to find [petitioner] guilty.

State v. Ware, 326 S.W.3d at 518.

The Missouri Court of Appeals' resolution of these claims was not based on an unreasonable determination of the facts or on a misapplication of federal constitutional law. See 28 U.S.C. 2254(d)(1) and (2); Jackson v. Virginia, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence in criminal trials is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). "In applying this standard, '[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited. . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that conclusion." Sexton v. Kemna, 278 F.3d 808, 814 (8th Cir. 2002) (citing Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994)), cert. denied, 537 U.S. 886 (2002).

In the present case, a trier of fact could have concluded beyond a reasonable doubt, based on Lunda Croney's testimony, the victim's statement, and other evidence, that the petitioner committed the crimes of first degree robbery and armed criminal action. Although it is possible to conclude from the evidence that someone other than the petitioner committed the crime, the jury was entitled to believe Ms. Croney's testimony as well as the statement of the victim. This Court may not conduct its own assessment of witness credibility, as that is the responsibility of the jury. Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000); see also United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996) ( "[t]he evidence need not exclude every reasonable hypothesis of

6

innocence. . . we may not disturb the conviction if the evidence rationally supports two conflicting hypotheses."). Consequently, the state appellate court's rejection of petitioner's claims was not unreasonable in light of the facts in this case or in light of clearly established federal law. See 28 U.S.C. § 2254 (d)(1) & (2). Therefore, Grounds 2, 3 and 5 will be denied.

### Ground 4

In Ground 4, petitioner contends that the prosecution committed a Brady (Brady v. Maryland, 373 U.S. 83 (1963)), violation by failing to provide petitioner a copy of co-defendant Lunda Croney's proffered statement. Doc. 1, pp. 24-25. Petitioner argues that Ms. Croney's testimony should have been excluded as a sanction for the Brady violation because the proffer contained potentially exculpatory evidence. Doc. 1, p. 27. "To prove a Brady violation, a defendant must show that the prosecution suppressed evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment." United States v. Duke, 50 F.3d 571, 577 (8th Cir.) (citing Prewitt v. Goeke, 978 F.2d 1073, 1078 (8th Cir. 1992)), cert. denied, 516 U.S. 885 (1995).

The mere possibility that the undisclosed evidence might have influenced the jury does not establish materiality. Knox v. State of Iowa, 131 F.3d 1278, 1283 (8th Cir. 1997). "Rather, there must be a reasonable probability that its disclosure would have led to a different result at trial, thus undermining confidence in the jury verdict." Id. In affirming petitioner's conviction and sentence, the Missouri Court of Appeals, Southern District, stated the following as to the Brady claim:

> After [petitioner] was arrested, both he and Croney were charged with robbery. The prosecutor offered to drop the charges against Croney if she testified against [petitioner].
> This case was tried in March 9-10, 2009. During a bench conference on March 9th, defense counsel said he had been told here was a videotaped proffer from Croney that was made in connection with her plea deal. Counsel had requested disclosure of such information, and he argued that the nondisclosure created a potential Brady violation. The prosecutor agreed to provide a copy of the videotape to defense counsel.
> When trial resumed on the 10th, the prosecutor reported that he was unable to find any proffer videotape concerning Croney. . . The prosecutor had never

7

reviewed any such videotape, and he did not know whether one existed. Defense counsel renewed his Brady motion and asked that Croney not be allowed to testify because the videotape might have contained exculpatory or impeaching material.

The court found that it was likely a proffer statement had been taken from Croney. The motion to exclude Croney's testimony was denied. The court decided there was no evidence that the videotaped proffer statement contained any exculpatory or impeaching material. As the court noted, "the purpose of the proffer was to provide incriminating evidence." The court also found that defense counsel would be able to cross-examine Croney and impeach her testimony using other witnesses.

Respondent's Exhibit F, pp. 17-18.

The state courts determined that, without knowledge of the details on the missing recording, it is impossible to determine whether any of the information disclosed by Ms. Croney in her proffer was exculpatory or could have been used to impeach her testimony. Id. at 20. Moreover, if petitioner's claim is construed to be a claim of lost evidence under Arizona v. Youngblood, 488 U.S. 51 (1988), petitioner has failed to demonstrate bad faith or intentional destruction of potentially exculpatory evidence in the loss of the videotaped recording of Ms. Croney's proffered statement. Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or "an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), petitioner's Ground 4 will be denied.

## Ground 6

Petitioner asserts a claim of trial court error in that the trial court erroneously excluded the expert testimony of John Gambon regarding the possible inaccuracy of eye witness testimony. Doc 1, p. 33. Prior to trial, defense counsel disclosed his intention to call an expert witness to testify about human memory and factors that affect the reliability of information, and the state filed a motion in limine to exclude the testimony because it invaded the province of the jury.

Respondent's Exhibit F, p. 21. The Missouri Court of Appeals, Western District, denied Ground 6 as follows:

> The admission or exclusion of expert testimony is a matter committed to the trial court's sound discretion. State v. Davis, 814 S.W.2d 593, 603 (Mo. banc 1991). This discretion is abused only when the trial court's ruling is arbitrary, unreasonable or clearly against the logic of the circumstances. State v. Wright, 247 S.W.3d 161, 165 (Mo. App. 2008). Based upon this Court's review of the offer of proof, it is clear that the sole purpose of Dr. Gambon's testimony was to cast doubt on the credibility of Victim's identification of [petitioner] as the robber. The trial court did not believe the admission of such testimony would aid the jury. In State v. Whitmill, 780 S.W.2d 45, 47 (Mo. banc 1989), the defendant tried to present expert testimony concerning the reliability of eyewitness identification. The testimony was excluded, and our Supreme Court affirmed that ruling:
>
>> Generally, expert testimony is inadmissible if it relates to the credibility of witnesses because this constitutes an invasion of the province of the jury. Lawhorn, 762 S.W.2d at 823; State v. Taylor, 663 S.W.2d 235 (Mo. banc 1984).
>>
>> In Lawhorn this Court held that a trial court may, in its discretion, exclude expert testimony regarding the credibility of eyewitness identifications. The defendant in that case would have offered expert testimony as to alleged difficulties of cross-racial identifications. This Court stated, "[S]uch matters are within the general realm of common experience of members of a jury and can be evaluated without an expert's assistance. . . . The fact that in many instances identifications may be unreliable and that the state's case and the subsequent determination of guilt or innocence may depend on the credibility of eyewitness identifications, does not leave a criminal defendant without protection if the trial court, in its discretion, denies the admissibility of expert testimony in this regard," Lawhorn, 762 S.W.2d at 823.
>>
>> In Whitmill's trial, several safeguards ensured that the defendant had an adequate opportunity to apprise the jury of the difficulties inherent in an eyewitness identification. The defendant fully cross-examined both Nivey and Theordis Mitchell, who identified the photograph of Whitmill as the man who shot them. Whitmill also had an opportunity to speak to the jury about the problem of identification in the opening statement and in closing argument; and the court instructed the jury on the factors it should consider in determining whether the identification was reliable. MAI-CR 3d 302.01. Thus, the Lawhorn protections, mentioned above, were present; and the trial court did not abuse its discretion in

> refusing to permit Professor Goldstein's testimony.
>
> Whitmill, 780 S.W.2d at 47. All of the trial safeguards mentioned in Whitmill were available to, and utilized by, defense counsel during [petitioner]'s trial. Victim was thoroughly cross-examined concerning her identification of [petitioner] as the man who committed the robbery. The reliability of Victim's identification was challenged by defense counsel in opening statement and closing argument. Instruction No. 1, which was patterned after MAI-CR 302.01, was read to jurors and described the various factors they should consider in determining the credibility of Victim's testimony. The exclusion of Dr. Gambon's testimony was not an abuse of discretion. See, e.g., State v. Lawhorn, 762 S.W.2d 820, 822-23 (Mo. banc 1988) (affirming the exclusion of expert testimony that witnesses have difficulty identifying suspects of other races) (citation omitted).

Respondent's Exhibit F, pp. 23-25.

"Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006) (citation and internal quotations omitted), cert. denied, 549 U.S. 835 (2006). "The exclusion of [evidence] based on state evidentiary rules results in the denial of due process only if there was an impropriety so egregious that it made the entire proceeding fundamentally unfair." Skillicorn v. Luebbers, 475 F.3d 965, 972 (8th Cir. 2007) (citation omitted), cert. denied sub nom. Skillicorn v. Roper, 552 U.S. 923 (2007). "To meet this burden, a habeas petitioner must show that 'absent the alleged impropriety the verdict probably would have been different.'" Id. (quoting Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995) (rehearing denied)).

Petitioner fails to meet this standard as he was afforded all of the trial safeguards mentioned in Whitmill, Respondent's Exhibit F, p. 24, and the record does not evince alleged errors that were "so conspicuously bad that [they] fatally infected the trial and rendered it

10

fundamentally unfair." Troupe v. Groose, 72 F.3d 75, 76 (8th Cir. 1995) (citing Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)). Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or "an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 6 will be denied.

## Ground 8

Petitioner contends that the trial court erred in denying petitioner's motion to quash the venire panel after two venire members revealed in open court a conversation that petitioner had with them outside the courtroom. Doc. 1, pp. 35-37. The Missouri Court of Appeals, Southern District, denied petitioner's allegations raised in Ground 8 as follows:

> [Petitioner]'s eighth point related to the judge's denial of a request to quash the entire venire. The following facts are relevant to this allegation of error.
> After the venire panel was sworn by the clerk and MAI-CR 300.02 was read, venireperson Maggard raised her hand and stated:
>
> VENIREPERSON MAGGARD: I wanted to know something. This morning when we were sitting out here in the deal, he was talking to us.
> THE COURT: He?
> VENIREPERSON MAGGARD: The- the guy up there.
> THE COURT: Okay.
> VENIREPERSON MAGGARD: The defendant.
> THE COURT: All right.
> VENIREPERSON MAGGARD: And I know where he is from. I know what he is saying and everything. So I don't feel like that I could—
> THE COURT: Tell me your number, ma'am.
> VENIREPERSON MAGGARD: Fifteen.
> THE COURT: Okay. And what's your name?
> VENIREPERSON MAGGARD: Judy Maggard.
> THE COURT: Okay. We'll probably ask you some more questions about that in a few minutes.
> VENIREPERSON MAGGARD: Okay.

11

During the State's voir dire, the prosecutor asked Maggard about this incident. The following colloquy occurred:

> Now, Ms. Maggard, you explained to us a while ago that the defendant was talking to different people?
> VENIREPERSON MAGGARD: I was sitting here and he was sitting over here and—
> [PROSECUTOR]: Outside—outside in the hallway?
> VENIREPERSON MAGGARD: Yeah. And he wanted to know something about if we was the jurors or something. I think is what he said. I couldn't hear him very well. But he did tell me where
> he is from and he said "I didn't do it."
> [PROSECUTOR]: Okay. Is that going to make it difficult for you to sit as a juror?
> VENIREPERSON MAGGARD: Yes, it is. Because, I mean, if he says he's not going to do it. I'm—you know, I feel like I already made up my mind one way or the other.
> [PROSECUTOR]: Okay. Thank you, Ms. Maggard, I appreciate it. Is there anyone else that heard the defendant talking when you were out there? Yes, ma'am, state your name and number?
> VENIREPERSON HOLT: Claudia Holt, 48. I heard the same thing.
> [PROSECUTOR]: Did that—did you make up your mind with that?
> VENIREPERSON HOLT: Yes, I did. He said that it's been going on for five years.
> [PROSECUTOR]: Four.
> VENIREPERSON HOLT: Well, he said five. That he came down here for like a week, week and a half, and that's been—he was accused of doing this.
> [PROSECUTOR]: Okay. All right. Your name again, ma'am?
> VENIREPERSON HOLT: Claudia Holt.
> [PROSECUTOR]: Holt?
> VENIREPERSON HOLT: Holt.
> [PROSECUTOR]: All right. Anyone else that you heard what the defendant was saying, and it—you made your mind up? Or if you heard what he was saying, that's what I want to find out first. Anyone else heard him or talk to him? Is there anyone here after hearing a couple of jurors saying, like Ms. Maggard and Ms. Holt, I've made my mind up? Is there anyone here who, because of

what you heard, you made your mind up, and that's it? All right. I see no response.

When the court took a recess, defense counsel moved to quash the panel:

> [DEFENSE COUNSEL]: Judge, based on the comments of two jurors that the defendant may have had communication with them, including statements professing innocence and talking about how long the case had been going on, those statements were then addressed to the entire panel. Uh, my concern is at this point that panel itself should be quashed due to the taint of the individual. I understand the problem that I'm dealing with is it's coming from the defendant's own conduct. But my concern about it is that it makes it look like the defendant is out there almost in a panhandling or begging for sympathy from the jury. And obviously it concerns me that other jurors may have heard that information and would hold that against defendant at deliberations. Based on that type of conduct, I would request that at this time the Court quash the panel, um, for purposes of fair trial toward the defendant.
> THE COURT: Comments, [prosecutor]?
> [PROSECUTOR]: No. Other than the fact that I object to it and ask you to overrule it. This trial has taken four years plus to get to this point. And I can't─you know, it is from the defendant's own responsibility. And if anybody should be asking for a quashing of the panel it would be me, and I'm not.
> THE COURT: Seems self-induced, [defense counsel]. Request is denied.

Maggard and Holt were struck for cause and did not serve on the jury.

Defendant contends the trial court erred by denying the motion to quash the venire. Defendant argues that this ruling deprived him of a fair and impartial jury. We disagree.

A trial court has broad discretion in determining whether a venire panel should be dismissed, and the court's ruling will not be disturbed on appeal absent a clear abuse of discretion. State v. Evans, 802 S.W.2d 507, 514 (Mo. banc 1991). A trial court abuses its discretion only if its ruling is clearly against the logic of the circumstances then before the court, and the ruling is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. State v. Fassero, 256 S.W.3d 109, 115 (Mo. banc 2008). The trial court's denial of the motion to quash the venire is presumed correct, and it is the defendant's burden to demonstrate otherwise. State v. Stewart, 296 S.W.3d 5, 10 (Mo. App.2009). A comment made by a particular venireperson does not require dismissal of the entire venire unless the statement was so inflammatory and prejudicial as to infringe upon a defendant's right to a fair trial. State v.

> Thompson, 985 S.W.2d 779, 789 (Mo. banc 1999).
>
> [Petitioner] has failed to demonstrate any prejudice resulting from the comments made by venirepersons Maggard and Holt. Neither venireperson expressed an opinion that [petitioner] was guilty of the charged crime. Based upon our review of the transcript, the trial court and other venirepersons reasonably could have concluded that Maggard and Holt believed [petitioner]'s statement that he was innocent. Because the comments by these two venirepersons did not create any negative connotation toward [petitioner], he failed to meet his burden of proving any prejudice resulting from the remarks. Stewart, 296 S.W.3d at 10; Glasgow v. State, 218 S.W.3d 484, 488 (Mo. App.2007); State v. Taylor, 166 S.W.3d 599, 609 (Mo. App.2005). In addition, the prosecutor inquired of the venire whether anyone else had been affected by hearing the comments made by Maggard and Holt. No one responded. The trial judge was in the best position to determine the effect of these allegedly improper comments on other members of the venire. Stewart, 296 S.W.3d at 10. Finally, it is well-settled that a criminal defendant may not seek relief from a judgment based upon an error committed at his instance. State v. Knese, 985 S.W.2d 759, 775 (Mo. banc 1999). The trial court did not err in denying [petitioner]'s motion to quash the venire panel.

Respondent's Exhibit F, pp. 6-10.

The state appellate court's determination that the conversation did not warrant reversal of petitioner's convictions or sentences was reasonable in light of the facts in this case and in light of clearly established federal law. See 28 U.S.C. § 2254(d)(1) and (2); Mack v. Caspari, 92 F.3d 637, 642 (8th Cir. 1996) (whether jurors are biased is a question of fact, and deference is given to the state court's determination of bias), cert. denied, 520 U.S. 1109 (1997). Although petitioner has not identified a constitutional violation that occurred in relation to Ground 8, he cannot obtain what amounts to a mistrial based on his own conduct. Where, as here, the trial court properly instructed the jury that their verdict should be based solely on the evidence presented in court, the trial court reasonably denied petitioner's motion to quash the jury panel. Thus, petitioner's Ground 8 is denied.

## Ground 9

In Ground 9, petitioner contends that his trial counsel was ineffective for failing to file a

14

motion in limine to exclude any evidence that another law enforcement agency had prepared the photographic line-up because that fact was evidence of uncharged crimes. Testimony was given, without objection, by the officer who prepared the line-up that he obtained the photographs used in the line-up from Greene County Sheriff's Department. Respondent's Exhibit A, pp. 257-59. No mention was made of how the Greene County Sheriff's Department obtained those photographs, and the officer later indicated that his agency did not have the capacity to prepare a line-up. Respondent's Exhibit A, pp. 257-59, 289.

In the post-conviction hearing, trial counsel testified that he did not see any problem with the creation of the photographic line-up and that he did not perceive it as evidence of a prior bad act by petitioner. Respondent's Exhibit H, pp. 34-35. Trial counsel also indicated that he had a strategic reason for not objecting to this testimony as he did not want to bring extra attention to the source of the photographs. Respondent's Exhibit L, p. 6.

Petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. Strickland v. Washington, 466 U.S. at 687-88. In order to demonstrate prejudice, "[petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

It is highly unlikely that the result of the proceeding would have been different if petitioner's attorney would have objected to disclosure of the fact that the photographs in the line-up were furnished by Greene County Sheriff's Department. The record, moreover, indicates that petitioner's attorney did not object for the very reason of not bringing attention to where the

photographs were obtained. Such strategic decisions are virtually unchallengeable. Strickland v. Washington, 466 U.S. at 690-91; see also Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987) ("[T]he courts must resist the temptation to second-guess a lawyer's trial strategy; the lawyer makes choices based on the law as it appears at the time, the facts as disclosed in the proceedings to that point, and his best judgment as to the attitudes and sympathies of judge and jury."). Because the state court's determination was not based upon an "unreasonable determination of the facts in light of the evidence" or a misapplication of "clearly established Federal law," 28 U.S.C. § 2254(d)(1) and (2), Ground 9 will be denied.

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

    /s/ Beth Phillips
BETH PHILLIPS
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: December 3, 2013 .